UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUCKYMOGO TECHNOLOGY LIMITED, LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, <br><br> Defendants. | Civil Action No. 24-cv-6198 |

## COMPLAINT

Plaintiff, Luckymogo Technology Limited, Ltd., by and through its undersigned counsel, hereby files this Complaint against the entities identified on Schedule A hereto (collectively, "Defendants"). In support thereof, Plaintiff states as follows:

### JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq. 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly

1

targets consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating one or more commercial, e-commerce stores through which Illinois residents can purchase products bearing counterfeit versions of Plaintiff's trademark. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiff's federally registered trademark to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

3. Alternatively, this Court has personal jurisdiction over the Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2) if any given Defendant is not subject to the jurisdiction of any state's court of general jurisdiction, because exercising jurisdiction over each Defendant is consistent with the United States Constitution and its laws.

**INTRODUCTION**

4. Plaintiff is an Iowa company that owns several trademarks registered with the United States Patent and Trademark Office, one of which is asserted in this case (the "Mark"). A copy of the trademark registration is attached as Exhibit 1 and will be filed under seal with the Court's approval. This action has been filed by Plaintiff to combat online counterfeiters and infringers who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit and infringing products, bearing Plaintiff's trademark (the "Counterfeit Products"). On information and belief, the Defendant Internet Stores are created by

the dozens and are designed to appear to be selling genuine copies of Plaintiff's products, while actually selling Counterfeit Products to unknowing consumers.

5. The Defendant Internet Stores share unique identifiers establishing a logical relationship between them and reflecting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation, including changing the names of their stores multiple times, opening new stores, helping their friends open stores, and making subtle changes to their products. Further, many of the platforms used by Defendants including Amazon, eBay, and Walmart do not properly verify or confirm names or addresses used by operators of the stores, which allows counterfeiters to open as many stores as they can using any number of names. On information and belief, these platforms have continued over the years to allow such behavior and provide a platform for such mass listing of counterfeit products on their platforms without verifying names or addresses of sellers or the authenticity of their products for sale.

6. Plaintiff is forced to file this action to combat Defendants' infringement of its trademark, as well as to protect unknowing consumers from purchasing the Counterfeit Products over the Internet on U.S. facing platforms. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's trademark and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for its sustained injury.

# THE PARTIES

**Plaintiff**

7. Plaintiff is an Iowa company based in Iowa that owns several trademarks registered with the United States Patent and Trademark Office, including the one asserted here (the "Mark").

8. Plaintiff manufactures and sells test products through its own online webstores and licenses the use of the Mark to a limited number of manufacturers of cosmetic products that are sold online and in retail shops around the world (collectively, the "Luckymogo Products"). The presence of the Mark increases the value of the Products by increasing brand awareness and consumer confidence.

9. Plaintiff's registration of the Mark is valid and enforceable.

10. Plaintiff's Mark is distinctive when applied to Plaintiff's Products, demonstrating to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards.

11. Plaintiff's Mark is a famous mark, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned.

12. Plaintiff has expended substantial time, money, and other resources in advertising and promoting its Mark and Products.

**The Defendants**

13. Defendants are individuals and business entities who reside in the People's Republic of China and other foreign jurisdictions, as identified on Schedule A. Defendants conduct business or assist in business conducted throughout the United States (including within the State of Illinois and this Judicial District) through the manufacturing, online advertising and offering for sale, and importation and distribution of products that incorporate counterfeit and infringing

products that bear Plaintiff's Mark. Defendants conduct business, or assist in business conducted, throughout the United States (including within the State of Illinois and this Judicial District) through the public display, online advertising and selling, and importation and distribution, of items that incorporate counterfeit and otherwise infringing products that bear Plaintiff's Mark. Each Defendant has targeted Illinois by selling or offering to sell, or knowingly assisting in selling or offering to sell, the Counterfeit Products to Illinois consumers through various online retail platforms.

14. Defendants appear to be an interrelated group of counterfeiters and infringers, who create numerous Defendant Internet Stores and design these stores to appear to be selling genuine versions of Plaintiff's licensed products, while they actually selling inferior imitations of Plaintiff licensed products. The Defendant Internet Stores share unique identifiers with common design elements, such as the same or similar products offered for sale, identical product descriptions or product titles, the same or substantially similar shopping cart platforms, accepted payment methods, check-out methods, lack of contact information, identically or similarly priced Counterfeit Products and volume sales discounts. These similar elements between Defendant Internet Stores establishes a logical relationship between them and suggests that Defendants' illegal operations arise out of the same transaction or occurrence. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

**DEFENDANTS' UNLAWFUL CONDUCT**

15. Plaintiff's business success has resulted in significant counterfeiting and other infringement of Plaintiff's federally protected trademark. Consequently, Plaintiff maintains an anti-counterfeiting program and investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. Plaintiff has identified many fully interactive e-commerce stores, including the Defendant Internet Stores, offering for sale and/or selling Counterfeit Products to consumers in this Judicial District and throughout the United States on platforms such as Amazon, Walmart, and eBay.

16. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2023 was over $2.7 billion. (*See* Exhibit. 2 at 2). Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. (*See* Exhibit. 3 at 8).

17. E-commerce retail platforms such as those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to regularly use false names and addresses when registering with these e-commerce retail platforms.

18. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Defendant Internet Stores aliases identified Schedule A attached hereto, offering shipping to the United States, including Illinois, accepting payment in U.S. dollars and, on information and belief, having sold Counterfeit Products to residents of Illinois.

19. Defendants employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing Defendant Internet

Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Defendant Internet Stores appear sophisticated and accept payment in U.S. dollars via credit cards, Amazon Pay, Western Union, and/or PayPal. Defendant Internet Stores often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use Plaintiff's Mark, and none of the Defendants are authorized retailers of genuine versions of Plaintiff's Products.

20. Upon information and belief, Defendants have engaged in fraudulent conduct when registering the Defendant Internet Stores by providing false, misleading, and/or incomplete information to e-commerce platforms. Upon information and belief, certain Defendants have anonymously registered and maintained aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

21. Upon information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products on e-commerce platforms such as Amazon. eBay, and Walmart. Such seller alias registration patterns are one of many common tactics used by Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

22. Even though operating under multiple fictitious aliases, unauthorized on-line retailers such as the Defendant Internet Stores often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other identifying information and likewise omit other seller aliases that they use. Further, such unauthorized retailers include other notable common features on their internet stores such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, similarities in price and

quantities, and/or the use of the same text and images. Further, counterfeit products offered for sale by unauthorized retailers such as the Defendant Internet Stores often bear irregularities and indicia of being counterfeit that are similar to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that these unauthorized retailers are interrelated.

23. Groups of counterfeiters such as Defendants here are typically in communication with each other. They regularly participate in QQ.com chat rooms, and also communicate through websites such as sellerdefense.cn and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

24. Counterfeiters such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operation despite enforcement efforts. Analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court. Here, on information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such off-shore accounts based outside of the jurisdiction of this Court. On information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their counterfeiting and other infringement of intellectual property rights.

25. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and

willfully used and continue to use illicit copies of products bearing Plaintiff's Mark in connection with the reproduction, public display, advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States, including Illinois, over the Internet.

26. Defendants operate at least the online marketplace accounts identified in Schedule A and engage in the unauthorized reproduction, public display, and distribution of products that bear Plaintiff's Mark.

27. Defendants' unauthorized reproduction, distribution, and public display of infringing products bearing Plaintiff's Mark is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## INFRINGEMENT OF A REGISTERED TRADEMARK
## IN VIOLATION OF 15 U.S.C. § 1114

28. Plaintiff re-alleges and incorporates by reference herein the allegations set forth in the preceding paragraphs.

29. Plaintiff is the owner or exclusive licensee of Plaintiff's Mark. Plaintiff's United States Registration for the Mark is in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the Mark and are willfully infringing and intentionally using counterfeits of the Mark. Defendants' willful, intentional and unauthorized use of the Mark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

30. This trademark infringement action against Defendants is based on their unauthorized use of counterfeit imitations in commerce of Plaintiff's federally registered Mark in connection with the sale, offering for sale, distribution, and/or advertising of counterfeit goods.

31. Defendants are using marks or symbols in commerce that are likely to cause confusion, or to cause mistake, or to deceive, and likely to cause purchasers and potential purchasers to falsely believe that Defendants' goods are sponsored by, approved by, or affiliated with Plaintiff, or that Plaintiff's goods are sponsored by, approved by, or affiliated with Defendants.

32. Defendants are using in commerce marks or symbols that are identical to, substantially indistinguishable from, colorable imitations of, or confusingly similar to Plaintiff's Mark, and the unauthorized use of Plaintiff's Mark by Defendants in commerce is likely to cause damage and other irreparable injury to Plaintiff unless such use is enjoined by this Court, Plaintiff having no adequate remedy at law.

33. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are currently still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of Plaintiff's Mark without Plaintiff's permission.

34. Defendants' use of marks in commerce that are identical to, substantially indistinguishable from, colorable imitations of, or confusingly similar to Plaintiff's Mark constitutes willful trademark infringement of Plaintiff's rights in and to its federally registered Mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35. After a reasonable opportunity for further investigation and discovery, it is likely the evidence will show that Defendants' aforesaid acts have been and are being committed with knowledge of Plaintiff's Mark, and that such acts are likely to cause confusion, or to cause mistake, or to deceive. Defendants' acts are therefore intentional, willful, and are maliciously calculated to cause confusion, to cause mistake, or to deceive. As such, this is an exceptional case.

36. In accordance with 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendants: (1) their profits, (2) any damages sustained by Plaintiff, and (3) the costs of the instant action. Further, based upon the nature of Defendants' violation of Plaintiff's trademark rights, Plaintiff is entitled to reasonable attorney's fees, treble damages, and/or enhanced profits.

37. Plaintiff is further entitled to an award of three times its damages or Defendants' profits for those Defendants found to be intentionally using a counterfeit mark, pursuant to 15 U.S.C. § 1117(b).

38. Alternatively, Plaintiff may elect at any time before judgment to recover, instead of actual damages or profits, an award of statutory damages of not less than $1,000 or more than $2,000,000 per counterfeit mark per type of good sold or offered for sale.

39. Plaintiff has no adequate remedy at law and has been or is likely to be irreparably damaged by Defendants' use of counterfeit and/or infringing marks in the United States and will continue to be irreparably damaged unless such use is immediately and permanently enjoined by this Court.

## COUNT II
## FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a)

40. Plaintiff re-alleges and incorporates by reference herein the allegations set forth in the preceding paragraphs.

41. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

42. By using the Plaintiff's Mark in connection with the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

43. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

44. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its Mark.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

(1) Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be permanently enjoined and restrained from:

    (a) using Plaintiff's Mark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Luckymogo Product or is not authorized by Plaintiff to be sold in connection with Plaintiff's Mark;

    (b) passing off, inducing, or enabling others to sell or pass off any product as a genuine Luckymogo Product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's Mark;

(c) committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff; and

(d) manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's Mark, including any reproductions, counterfeit copies, or colorable imitations thereof.

(2) Directing that Defendants deliver for destruction all products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of any of Plaintiff's Trademark.

(3) Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, on-line marketplaces, and other third-parties who are in active concert or participation with Defendants, shall, within two (2) business days of receipt of an Order entered by this Court:

(a) Locate all accounts connected to Defendants;

(b) Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

(c) Transfer to Plaintiff all funds restrained in such accounts up to the amount of any monetary relief awarded to Plaintiff by this Court within ten (10) business days of receipt of such Order.

(4) Entering an Order that, until Plaintiff has recovered full payment of monies owed to it by Defendants, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff shall have the ongoing authority to direct any banks, savings and loan associations, other financial institutions, payment processors, and on-line marketplaces, with whom such newly identified accounts are maintained, to carry out the following activity:

    (a) Locate all accounts connected to Defendants;

    (b) Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

    (c) Transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of this Order.

(5) Awarding Plaintiff statutory damages based on Defendants' willful trademark infringement, pursuant to 15 U.S.C. § 1117(c)(2), in an amount of not less than $1,000 or more than $2,000,000 per counterfeit mark per type of good sold or offered for sale, per Defendant;

(6) Alternatively, should the Court not award Plaintiff statutory damages, that Defendants be ordered to pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of Plaintiff's Trademark as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

(7) Awarding Plaintiff its reasonable attorneys' fees and costs; and

(8) Awarding Plaintiff any and all other relief that this Court deems just and proper.

Date: July 23, 2024                                           Respectfully submitted,

By: /s/ Shengmao Mu
Shengmao (Sam) Mu, NY #5707021
Abby Neu ARDC 6327370
Keaton Smith ARDC 6347736
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (917) 858-8018
Email: smu@whitewoodlaw.com

*Counsel for Plaintiff*